UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CORBERT J. PLAISANCE, SR., ET AL    *
                                *       CIVIL ACTION NO. 2-23-cv- 05426
             Plaintiff    *
VERSUS                        *       SECTION: "P" (4)
                                *
TAYLOR-SEIDENBACH, INC., ET AL    *       JUDGE DARREL JAMES PAPILLION
                                *
                                *       MAGISTRATE JUDGE KAREN
                                *       WELLS ROBY
                    Defendants    *

**HUNTINGTON INGALLS INCORPORATED'S
ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS'
PETITION FOR DAMAGES AND FIRST SUPPLEMENTAL, AMENDED, AND
RESTATED PETITION FOR DAMAGES, CROSS-CLAIMS,
THIRD PARTY COMPLAINT, AND JURY DEMAND**

    **NOW INTO COURT**, through undersigned counsel, comes defendant, Huntington Ingalls

Inc. (f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc.) ("Avondale"),

who hereby answers plaintiffs' Petition for Damages ("Petition") and First Supplemental,

Amended, and Restated Petition for Damages ("First Supplement") as follows:

## ANSWER TO THE PETITION FOR DAMAGES

### I.

    The allegations contained in Paragraph 1 of the Petition are denied for lack of sufficient

information to justify a belief therein.

### II.

    The allegations contained in Paragraph 2 of the Petition are denied for lack of sufficient

information to justify a belief therein.

#4930004

III.

The allegations contained in Paragraph 3 of the Petition are denied for lack of sufficient information to justify a belief therein.

IV.

The allegations contained in Paragraph 4 of the Petition are denied for lack of sufficient information to justify a belief therein.

V.

The allegations contained in Paragraph 5 of the Petition are denied for lack of sufficient information to justify a belief therein.

VI.

The allegations contained in Paragraph 6 of the Petition are denied for lack of sufficient information to justify a belief therein.

VII.

The allegations contained in Paragraph 7 of the Petition are denied for lack of sufficient information to justify a belief therein.

VIII.

The allegations contained in Paragraph 8 of the Petition are denied for lack of sufficient information to justify a belief therein.

IX.

The allegations contained in Paragraph 9 of the Petition are denied for lack of sufficient information to justify a belief therein.  Further, Avondale asserts that any disclaimers made by plaintiff are without legal effect.

#4930004

X.

The allegations contained in Paragraph 10 of the Petition are denied for lack of sufficient information to justify a belief therein.

XI.

The allegations contained in Paragraph 11 of the Petition, including sub-parts, are denied for lack of sufficient information to justify a belief therein.

XII.

The allegations contained in Paragraph 12 of the Petition are denied for lack of sufficient information to justify a belief therein.

XIII.

The allegations contained in Paragraph 13 of the Petition are denied for lack of sufficient information to justify a belief therein.

XIV.

The allegations contained in Paragraph 14 of the Petition, including all sub-parts, are denied for lack of sufficient information to justify a belief therein.

XV.

The allegations contained in Paragraph 15 of the Petition are denied for lack of sufficient information to justify a belief therein.

XVI.

The allegations contained in Paragraph 16 of the Petition are denied.  It being specifically denied that plaintiff is entitled to the relief requested or to any relief whatsoever.

#4930004

## ANSWER TO THE FIRST SUPPLEMENTAL, AMENDED, AND RESTATED PETITION FOR DAMAGES

### I.

The allegations contained in Paragraph 1 of the First Supplement, including all sub-parts, are denied for lack of sufficient information to justify a belief therein.

### II.

The allegations contained in Paragraph 2 of the First Supplement, including all sub-paragraphs, are denied for lack of sufficient information to justify a belief therein.

### III.

Except to admit that Avondale is a foreign corporation licensed to do business in Louisiana, the allegations of Paragraph 3 of the First Supplement are denied to the extent that they are directed against Avondale.  Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

### IV.

The allegations contained in Paragraph 4 of the First Supplement are denied for lack of sufficient information to justify a belief therein.

### V.

The allegations contained in Paragraph 5 of the First Supplement are denied to the extent that they are directed against Avondale.  Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

### VI.

The allegations contained in Paragraph 6 of the First Supplement are for lack of sufficient information to justify a belief therein.

#4930004

VII.

The allegations contained in Paragraph 7 of the First Supplement are denied to the extent that they are directed against Avondale. Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

VIII.

The allegations contained in Paragraph 8 of the Petition are denied to the extent that they are directed against Avondale. Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

IX.

The allegations contained in Paragraph 9 of the First Supplement are denied to the extent that they are directed against Avondale. Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

X.

The allegations contained in Paragraph 10 of the First Supplement are denied to the extent that they are directed against Avondale. Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

XI.

The allegations contained in Paragraph 11 of the First Supplement are denied to the extent that they are directed against Avondale. Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein. Further, Avondale asserts that any disclaimers made by plaintiff are without legal effect.

#4930004

XII.

The allegations contained in Paragraph 12 of the First Supplement are denied for lack of sufficient information to justify a belief therein.

XIII.

The allegations contained in Paragraph 13 of the First Supplement, including all sub-parts, are denied to the extent that they are directed against Avondale. Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

XIV.

The allegations contained in Paragraph 14 of the First Supplement are denied to the extent that they are directed against Avondale. Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

XV.

The allegations contained in Paragraph 15 of the First Supplement are denied to the extent that they are directed against Avondale. Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

XVI.

The allegations contained in Paragraph 16 of the First Supplement are denied to the extent that they are directed against Avondale. Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

XVII.

The allegations contained in Paragraph 17 of the First Supplement are denied to the extent that they are directed against Avondale. Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

#4930004

## XVIII.

The allegations contained in Paragraph 18 of the First Supplement, including all sub-parts, are denied to the extent that they are directed against Avondale.  Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

## XIX.

The allegations contained in Paragraph 19 of the First Supplement are denied to the extent that they are directed against Avondale.  Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

## XX.

The allegations contained in Paragraph 20 of the First Supplement are denied to the extent that they are directed against Avondale.  Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

## XXI.

The allegations contained in Paragraph 21 of the First Supplement are denied to the extent that they are directed against Avondale.  Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

## XXII.

The allegations contained in Paragraph 22 of the First Supplement are denied to the extent that they are directed against Avondale.  Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

#4930004

XXIII.

The allegations contained in Paragraph 23 of the First Supplement, including all sub-parts, are denied to the extent that they are directed against Avondale.  Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

XXIV.

The allegations contained in Paragraph 24 of the First Supplement are denied for lack of sufficient information to justify a belief therein.

XXV.

The allegations contained in Paragraph 25 of the First Supplement are denied for lack of sufficient information to justify a belief therein.

XXVI.

The allegations contained in Paragraph 26 of the First Supplement are denied for lack of sufficient information to justify a belief therein.

XXVII.

The allegations contained in Paragraph 27 of the First Supplement, including all sub-parts, are denied to the extent that they are directed against Avondale.  Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

XXVIII.

The allegations contained in Paragraph 28 of the First Supplement are denied to the extent that they are directed against Avondale.  Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

#4930004

## XXIX.

The allegations contained in Paragraph 29 of the First Supplement are denied to the extent that they are directed against Avondale.  Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

## XXX.

The allegations contained in Paragraph 30 of the First Supplement are denied to the extent that they are directed against Avondale.  Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

## XXXI.

The allegations contained in Paragraph 31 of the First Supplement, including all sub-parts, are denied to the extent that they are directed against Avondale.  Otherwise, the allegations are denied for lack of sufficient information to justify a belief therein.

## XXXII.

The allegations in the unnumbered paragraph beginning with the words "WHEREFORE, on the basis" are denied.  It being specifically denied that plaintiffs are entitled to the relief requested or to any relief, whatsoever.

## XXXIII.

Defendant joins in plaintiffs' request for a jury trial.

## **AFFIRMATIVE DEFENSES**

AND NOW, FURTHER ANSWERING, defendant, Avondale, asserts the following Affirmative Defenses herein:

#4930004

**FIRST DEFENSE**

FURTHER ANSWERING, defendant herein affirmatively denies any and all allegations of fault or other bases of liability on the part of Avondale.  Defendant herein specifically denies that it is guilty of wrongdoing with respect to the supervision of Corbert Plaisance, Sr. during his alleged employment at Avondale or with regards to the safety precautions taken on his behalf during that employment.

**SECOND DEFENSE**

FURTHER ANSWERING, in the alternative, Avondale avers that plaintiffs are barred from prosecuting this action because of Corbert Plaisance, Sr.'s knowledge and assumption of the risks and dangers associated with his employment at Avondale.

**THIRD DEFENSE**

FURTHER ANSWERING, in the alternative, Avondale herein avers that the alleged injuries complained of herein, if any, were caused by the sole and/or concurrent negligence of Corbert Plaisance, Sr. in failing to properly care for his own personal protection and safety and/or utilize safety equipment, thus barring any recovery herein.

**FOURTH DEFENSE**

FURTHER ANSWERING, in the alternative, if the alleged injuries complained of by plaintiffs herein, if any, are found to have been caused by the acts, omissions, commissions, or conditions of Avondale, then the alleged negligence of Corbert Plaisance, Sr. was a contributing cause of those alleged injuries, thus either barring or diminishing plaintiffs' entitlement to recovery.

#4930004

**FIFTH DEFENSE**

FURTHER ANSWERING, in the alternative, and in the event that Avondale is found liable, which liability is specifically denied, defendant avers that it is entitled to a set off of all amounts recovered under the Longshore and Harbor Workers' Compensation Act or, alternatively, the Louisiana Workers' Compensation Act, if any, against any judgment which may be rendered arising out of this litigation.

**SIXTH DEFENSE**

FURTHER ANSWERING, in the alternative, Avondale pleads that plaintiffs have failed to state a cause of action, as plaintiffs' sole remedy for the alleged injuries complained of herein, if any, is provided for exclusively in the Longshore and Harbor Workers' Compensation Act or, alternatively, the Louisiana Workers' Compensation Act, which bars all allegations herein.

**SEVENTH DEFENSE**

FURTHER ANSWERING, Avondale avers that the alleged injuries complained of by plaintiffs herein, if any, were caused by the acts, omissions, commissions, or conditions which were the responsibility of persons other than Avondale and for whom Avondale has no legal responsibility.

**EIGHTH DEFENSE**

FURTHER ANSWERING, plaintiffs' injuries and/or damages, if any, were the result of an act of God or unavoidable accident.

**NINTH DEFENSE**

FURTHER ANSWERING, the cause of action stated by plaintiffs has prescribed or been extinguished in some other manner.

#4930004

## TENTH DEFENSE

FURTHER ANSWERING, the cause of action is barred by the doctrine of accord and satisfaction.

## ELEVENTH DEFENSE

FURTHER ANSWERING, the cause of action is barred by the doctrine of *Res Judicata*.

## TWELFTH DEFENSE

FURTHER ANSWERING, defendant herein affirmatively pleads that in the event plaintiffs settle with and/or otherwise release any manufacturers, distributors, suppliers, and/or vendors of asbestos-containing products to which plaintiffs claim Corbert Plaisance, Sr. was exposed, then that settlement and/or release extinguishes Avondale's secondary or derivative strict liability to plaintiffs.

## THIRTEENTH DEFENSE

FURTHER ANSWERING, Defendant herein affirmatively pleads that in the event plaintiffs settle with and/or otherwise release any solidary obligors without reserving their right to proceed against the remaining solidary obligors, then the debt to plaintiffs is discharged as to any remaining solidary obligors pursuant to La. Civil Code Art. 2203 in effect at the time of the alleged acts and omissions which form the basis of this lawsuit.

## FOURTEENTH DEFENSE

FURTHER ANSWERING, Defendant affirmatively pleads that in the event plaintiffs settle with and/or otherwise release any persons or entities, whether named as defendants or not, then defendant is entitled to a credit for the virile share of those settling/released persons or entities.

#4930004

## FIFTEENTH DEFENSE

FURTHER ANSWERING, plaintiffs' claims are barred by the government contractor immunity defense established in *Boyle v. United Technologies Corporation.*

## SIXTEENTH DEFENSE

FURTHER ANSWERING, plaintiffs' claims against Avondale are barred by the federal defense of derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), and its progeny.

## CROSS-CLAIMS AND THIRD PARTY COMPLAINT

1.

Plaintiffs, Rita W. Plaisance, Corbert J. Plaisance, Jr., and Stacey Plaisance Waguespack, filed suit seeking damages for injuries allegedly sustained as a result of Corbert Plaisance, Sr.'s alleged asbestos exposure.

2.

Avondale has been named as a defendant by the plaintiffs in this case.

3.

Avondale denies any and all liability in this case.

4.

Alternatively, while denying any and all liability, Avondale is entitled to virile share contributions from and/or application of comparative fault of the Cross-Claim and Third Party Defendants for any and all amounts for which it may be cast in judgment and virile share credits or set-offs with respect to all Cross-Claim and Third Party Defendants who may settle plaintiffs' claims.

13

#4930004

5.

Named as **Cross-Claim Defendants** are the following:

A.  **Eagle, Inc.** (f/k/a Eagle Asbestos & Packing Co. and Eagle Packing & Equipment Co.);

B.  **Foster Wheeler Energy Corporation**;

C.  **General Electric Company**;

D.  **Gulf Engineering Company, LLC** (as successor by merger to Gulf Engineering Company, Inc., f/k/a Gulf Engineering Service & Specialty Company, Inc.);

E.  **Hopeman Brothers, Inc.**;

F.  **International Paper Company** (f/k/a Champion International Corporation, f/k/a U.S. Plywood Corporation);

G.  **Liberty Mutual Insurance Company** as insurer of Wayne Manufacturing Company;

H.  **Paramount Global** (f/k/a ViacomCBS, Inc., f/k/a CBS Corporation, f/k/a Viacom, Inc., successor by merger to CBS Corporation, f/k/a Westinghouse Electric Corporation);

I.  **Taylor-Seidenbach, Inc.**;

J.  **Zurich American Insurance Company** (as successor by merger to Maryland Casualty Company) as insurer of Gulf Engineering Company, LLC (as successor by merger to Gulf Engineering Company, Inc., f/k/a Gulf Engineering Service & Specialty Company, Inc.);

K.  **Level 3 Holdings, Inc.** (f/k/a Whitney Holdings, Inc., as successor in interest to Peter Kiewit Sons' Co.);

L.  **McDermott, Inc.** (individually and as successor in interest to Ike Haggard Machine Works);

M.  **Oregon Tool, Inc.** (individually and as successor in interest to Blount Brothers Corporation);

N.  **Pharmacia, LLC** (f/k/a Pharmacia Corporation, f/k/a Monsanto Company, f/k/a Monsanto Chemical Company);

O.  **Trinity Industries, Inc.** (individually and as successor in interest to Gretna Machine & Iron Works, Inc.);

14

P.  **Union Carbide Corporation**; and

Q.  **Zenith, Inc.**

6.

Avondale adopts herein by reference as though set forth *in extenso* all of the plaintiffs' allegations against the Cross-Claim Defendants as asserted in plaintiffs' Petition for Damages and First Supplemental, Amended, and Restated Petition for Damages , insofar as they assert the fault, negligence, strict liability, and other bases of liability against the Cross-Claim Defendants. Avondale further alleges that plaintiffs' allegations against the Cross-Claim Defendants are equally applicable to the fault, negligence, strict liability, and other bases for liability against the Third Party Defendants and adopts those allegations and asserts them against the Third Party Defendants as though set forth herein *in extenso* and specifically against the Third Party Defendants. This defendant affirmatively disavows any allegations against the Cross-Claim and Third Party Defendants based on intentional tort.

7.

Made **Third Party Defendants** herein are:

A.  **Anco Insulations, Inc.**;

B.  **Bayer Cropscience, Inc.** (successor to Rhone Poulenc AG Company, f/k/a Bayer Products, Inc., f/k/a Amchem Products, Inc., f/k/a Benjamin Foster Company);

C.  **The Manville Personal Injury Settlement Trust**, as successor-in-interest to the Johns-Manville Corporation, a trust organized and existing under the laws of the State of New York, and administered through the Claims Resolution Management Corporation, a subsidiary of the Manville Personal Injury Settlement Trust, a company organized and existing under the laws of the Commonwealth of Virginia;

D.  **Uniroyal Holding, Inc.**;

E.  **United States Fidelity and Guaranty Company** as insurer of G&H Management, successor by merger to Geosource, Inc., individually and as successor to Hunt Tool Co.;

15

F. **The Travelers Indemnity Company** (f/k/a The Aetna Casualty and Surety Company), as insurer of G&H Management, successor by merger to Geosource, Inc., individually and as successor to Hunt Tool Co.; and

G. **Standard Fire Insurance Company** as insurer of G&H Management, successor by merger to Geosource, Inc., individually and as successor to Hunt Tool Co.

8.

Plaintiffs allege that Corbert Plaisance, Sr. contracted mesothelioma from his exposure to asbestos from several different sources.

9.

Cross-Claim and Third Party Defendants are allegedly all miners, manufacturers, sellers, distributors, suppliers, installers and/or users of asbestos products, or were insurers of miners, manufacturers, sellers, distributors, suppliers, installers and/or users of asbestos products, and were engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos products, or representing themselves as manufacturers of asbestos products and/or were commercial suppliers and/or professional vendors of asbestos or asbestos-containing products, which were expected to and did reach the workplaces of Corbert Plaisance, Sr., which caused him to be allegedly exposed to the products.

10.

The products mined, manufactured, distributed, supplied, sold, and/or used by the Cross-Claim and Third Party Defendants were defective, unreasonably dangerous, and unreasonably dangerous *per se*. Corbert Plaisance, Sr. was an intended and/or foreseeable user exposed to these products. These defects include, without limitation, the following:

a.    the mining, manufacture, sale, supply, distribution and use of products that are unreasonably dangerous or unreasonably dangerous *per se*;

b.    the mining, manufacture, sale, supply, distribution and use of products that possess inherent and known properties that make them unreasonably

16

dangerous by presenting potential for causing serious injury and death to those who would be exposed to them;

c.      lack of warning or of sufficient warning of the hazards these products would present in the course of their normal, foreseeable use or intended use;

d.      lack of safety instruction or of sufficient safety instruction for eliminating or reducing the health risks associated with the intended ultimate use of these products;

e.      failure to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

f.      failure to test or adequately test these products for defects or hazards that they could present to the intended or foreseeable users;

g.      failure to truthfully report or adequately report the results of product testing, and medical studies associated with foreseeable hazards of exposure to these products by intended or foreseeable users, bystanders and others;

h.      failure to properly design these products where the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

i.      defects in the composition and construction of these products;

j.      failure to recall these products mined, manufactured, sold, supplied and distributed;

k.      failure to properly package these products so that they could be safely transported, handled, stored, or disposed; and

l.      over-warranting the safety of these products that were manufactured, sold or supplied by the Cross-Claim and Third Party Defendants.

11.

The negligence, fault, and defective products of Cross-Claims and Third Party Defendants are the proximate cause of Corbert Plaisance, Sr.'s alleged harm, if any.

12.

Cross-Claim and Third Party Defendants are liable for negligence, fault, strict liability, professional vendor liability, and strict products liability in connection with the manufacturing,

#4930004

distributing, design and/or installation of asbestos-containing products which were defective in design and unreasonably dangerous *per* se*,* and for failure to warn Corbert Plaisance, Sr. concerning asbestos hazards posed by their products.

13.

Bayer Cropscience, Inc. ("Amchem") was a manufacturer, seller, distributor, supplier and/or user of asbestos products, including asbestos-containing mastics and adhesives, and was engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos products, or was a professional vendor of asbestos-containing products.

14.

Amchem was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Corbert Plaisance, Sr. and others similarly situated could be injured as a result of this type of exposure, but negligently failed to institute protective measures and to warn Corbert Plaisance, Sr. and/or Avondale of the potential health hazards from exposure to asbestos and was negligent in allegedly allowing Corbert Plaisance, Sr. to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Plaintiffs' alleged injuries, including Corbert Plaisance, Sr.'s alleged mesothelioma, if any.

15.

As a manufacturer of asbestos products, Amchem knew or should have known that exposing Corbert Plaisance, Sr., and those similarly situated, to asbestos would cause injury and, despite that knowledge, Amchem did not provide proper instructions and/or warnings to Avondale and others for which Amchem is liable pursuant to Louisiana Civil Code article 2315.

#4930004

16.

Products, materials, component parts and/or equipment manufactured by Amchem were used at Avondale. If Corbert Plaisance, Sr. was exposed to some level of dust from products used at Avondale, which is denied, Amchem is liable for negligence, fault, professional vendor liability, strict liability, and strict products liability in connection with the manufacturing, distributing and design of asbestos-containing products used at Avondale which were defective in design, unreasonably dangerous, unreasonably dangerous *per se,* and for failure to warn purchasers, users, and others such as Corbert Plaisance, Sr. and/or Avondale. Amchem is therefore liable for Plaintiffs' alleged injuries, if any.

17.

Johns-Manville manufactured asbestos-containing pipe insulation, asbestos-containing mud, asbestos-containing insulation block, asbestos-containing cloth and other asbestos insulation materials to which Corbert Plaisance, Sr. allegedly was exposed. Johns-Manville is liable for negligence, fault, strict products liability and strict liability in connection with the manufacturing, distributing and design of asbestos-containing products which were defective in design, unreasonably dangerous *per* se*,* and for failure to warn Corbert Plaisance, Sr. concerning asbestos hazards posed by its products.

18.

Johns-Manville manufactured asbestos-containing Marinite board, as well as asbestos containing pipe insulation, asbestos-containing mud, asbestos-containing insulation block, asbestos-containing cloth, and other asbestos insulation materials used at Avondale. If Corbert Plaisance, Sr. was exposed to some level of dust from products used at Avondale, which is denied, Johns-Manville is liable for negligence, fault, and strict liability and strict products liability in

connection with the manufacturing, distributing and design of asbestos-containing products used at Avondale which were defective in design, unreasonably dangerous, unreasonably dangerous *per se*, and for failure to warn purchasers, users, and others such as Avondale and Corbert Plaisance, Sr.

19.

Johns-Manville was aware or should have been aware of the dangers presented by exposure to its asbestos products and manufacturing premises and that Corbert Plaisance, Sr. could be injured as result of this exposure but negligently failed to institute protective measures and to warn Corbert Plaisance, Sr. of the potential dangers to his health from exposure to asbestos and was negligent in allowing Corbert Plaisance, Sr. to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Corbert Plaisance, Sr.'s alleged injuries, including his alleged mesothelioma.

20.

In addition to exposures to asbestos from Johns-Manville products used at worksites of Corbert Plaisance, Sr.,  he was exposed to asbestos from asbestos-containing scrap material generated by the Johns-Manville manufacturing facility in Marrero, Louisiana (and earlier in its Gretna, Louisiana facility), as well as from asbestos generated and released from the Johns-Manville manufacturing facility into the atmosphere of Corbert Plaisance, Sr.'s neighborhood, where he regularly and frequently breathed substantial amounts of asbestos as a result of such operations.  The asbestos scrap material was delivered on or near properties where Corbert Plaisance, Sr. resided, resulting in substantial exposures to Corbert Plaisance, Sr., which were the sole and exclusive proximate cause of the damages alleged by Plaintiffs in this lawsuit.

#4930004

21.

Johns-Manville used raw asbestos at its Marrero facility, including crocidolite, and manufactured asbestos-containing transite pipe and other asbestos-containing materials and products to which Corbert Plaisance, Sr. was exposed.  Johns Manville is liable for negligence, fault, strict products liability and strict liability in connection with the manufacture, sale and distribution of asbestos-containing products and waste material from its manufacturing processes at its Marrero facility, which products and material were defective in design and unreasonably dangerous *per* se*, and for failure to warn Corbert Plaisance, Sr. concerning the hazards posed by its asbestos products and waste materials.

22.

As a manufacturer of asbestos products, Johns-Manville knew or should have known that exposing Corbert Plaisance, Sr., and those similarly situated, to asbestos would cause injury, and despite that knowledge, Johns-Manville did not provide proper instructions and/or warnings, for which Johns-Manville is liable pursuant to Louisiana Civil Code article 2315.

23.

The Manville Personal Injury Settlement Trust has succeeded to the liabilities of Johns-Manville Corporation, and is the entity subject to claims for contribution or for establishing credits or offsets with respect to the asbestos-related liabilities of Johns-Manville asserted herein. Insofar as Louisiana virile share liability law applies to the claims in this case, then Johns-Manville, by and through its respective trust, is brought into this action for the purpose of having its fault allocated in accordance with same. This third-party claim is being asserted against the Trust in accordance with the Trust Distribution Process ("TDP") for the sole purpose of listing the Trust

on a verdict form or otherwise as necessary to ensure that any verdict reduction in respect of the Manville (or Trust) liability share is made pursuant to applicable law. Avondale disclaims any claim for relief beyond that which is provided in the TDP. Further, out of an abundance of caution and insofar as it may be required, Avondale waives any requirement of that the Manville Personal Injury Settlement Trust appear, answer, be subject to discovery as a party, or be subject to default or other trial court process or procedure; and Avondale stipulates that it will not move for a continuance of trial on grounds that the Manville Personal Injury Settlement Trust was not required to appear and answer.

24.

Uniroyal Holding, Inc. ("Uniroyal") was a manufacturer, seller, distributor, supplier and/or user of asbestos products, including asbestos-containing cloth, tape, yarn, and adhesives, and was engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos products, and/or was a commercial supplier and/or professional vendor of asbestos-containing products.

25.

Uniroyal was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Corbert Plaisance, Sr. and others similarly situated could be injured as a result of this type of exposure, but negligently failed to institute protective measures and/or warn Corbert Plaisance, Sr. and/or Avondale of the potential health hazards from exposure to asbestos and was negligent in allegedly allowing Corbert Plaisance, Sr. to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Corbert Plaisance, Sr.'s alleged injuries, including his alleged mesothelioma, if any.

22

26.

As a manufacturer of asbestos products, Uniroyal knew or should have known that exposing Corbert Plaisance, Sr., and those similarly situated, to asbestos would cause injury and, despite that knowledge, Uniroyal did not provide proper instructions and/or warnings to Avondale and others for which Uniroyal is liable pursuant to Louisiana Civil Code article 2315.

27.

At all times relevant hereto, asbestos-containing products and materials manufactured by Uniroyal were used at Avondale. If Corbert Plaisance, Sr. was exposed to some level of asbestos-containing dust from products used at Avondale, which is denied, Uniroyal Holding, Inc. is liable for negligence, fault, professional vendor liability, and strict liability and strict products liability in connection with the manufacturing, distributing and design of asbestos-containing products used at Avondale which were defective in design, unreasonably dangerous, unreasonably dangerous *per se*, and for failure to warn purchasers, users, and others such as Corbert Plaisance, Sr. and/or Avondale. Uniroyal Holding, Inc. is therefore liable for Plaintiffs' alleged injuries, if any.

28.

Anco Insulations, Inc. ("Anco") performed contracting work wherein it sold, supplied, distributed, used, removed, installed, applied, cut, handled, and/or manipulated asbestos-containing products at Corbert Plaisance, Sr.'s worksites, including Union Carbide Corporation while he was employed by Peter Keiwit.  While working on the premises of Union Carbide, Corbert Plaisance, Sr. worked in the vicinity of and was exposed to asbestos from asbestos-containing products sold, supplied, distributed, used, removed, installed, applied, cut, handled and/or manipulated by Anco. Further, Anco took no precautions to minimize the risk of danger or

warn Corbert Plaisance, Sr. or others similarly situated of such dangers of exposure to asbestos fibers.

29.

Anco had the care, custody, and control of asbestos-containing products to which Corbert Plaisance, Sr. was exposed, which products were defective, unreasonably dangerous, and unreasonably dangerous *per se*. Corbert Plaisance, Sr.'s exposures to asbestos fibers from products sold, supplied, distributed, used, removed, installed, applied, cut, handled, and/or manipulated by Anco were a substantial contributing cause of Corbert Plaisance, Sr.'s alleged injuries, including his alleged mesothelioma, if any. Anco is liable for negligence, strict products liability, and strict liability and, further, is liable as a professional vendor and/or commercial supplier as set forth herein and in the above paragraphs.

30.

Anco was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Corbert Plaisance, Sr. and others similarly situated could be injured as a result of this type of exposure, but negligently failed to institute protective measures and/or warn Corbert Plaisance, Sr. and/or his employer of the potential health hazards from exposure to asbestos and was negligent in allegedly allowing Corbert Plaisance, Sr. to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Corbert Plaisance, Sr.'s alleged injuries, including his alleged mesothelioma, if any.

31.

Upon information and belief, Corbert Plaisance, Sr. was employed by Hunt Tool Co. where he was exposed to asbestos. Corbert Plaisance, Sr. worked as welder and worked with and near others using asbestos-containing products. As a result of this work, Corbert Plaisance, Sr. was

#4930004

exposed to asbestos.  Hunt Tool Co. was aware or should have been aware of the dangerous condition presented by exposure to asbestos and that Corbert, Plaisance, Sr. could be injured as a result of this exposure, but negligently failed to warn Corbert Plaisance, Sr. of the potential dangers to his health from exposure to asbestos and was negligent in allowing Corbert Plaisance, Sr. to be exposed to unsafe levels of asbestos, which exposures caused or contributed to his alleged injuries, including his alleged mesothelioma, if any.

32.

Hunt Tool Co. is strictly liable for exposing Corbert Plaisance, Sr. to hazardous, defective and harmful things, i.e., asbestos and asbestos-containing products, in its *garde*, care, custody, and control.

33.

Hunt Tool Co. had the responsibility of providing Corbert Plaisance, Sr. with a safe place to work, safety equipment, and safe sanitation procedures, the failure of which, were the proximate cause in whole or in part of Corbert Plaisance, Sr.'s alleged mesothelioma, if any. Corbert Plaisance, Sr. failed to exercise reasonable care for the safety of its employees, including Corbert Plaisance, Sr.

34.

As a direct and proximate result of the foregoing acts and omissions on the part of Hunt Tool Co., Corbert Plaisance, Sr. suffered exposures to asbestos dust and fibers, which resulted in the injuries alleged by Plaintiffs, if any.

35.

For all times pertinent, Hunt Tool Co. knew or should have known that exposing Corbert Plaisance, Sr. to asbestos would cause injury and, despite that knowledge, did not provide proper

#4930004

protection and/or warnings to Corbert Plaisance, Sr. for which it is liable pursuant to Louisiana Civil Code article 2315.

36.

At all material times herein, United States Fidelity and Guaranty Company, The Travelers Indemnity Company (f/k/a The Aetna Casualty and Surety Company), and Standard Fire Insurance Company provided policies of insurance to Hunt Tool Co. which covered Hunt Tool Co. for the damages complained of herein.  Hunt Tool Co. is now defunct.  United States Fidelity and Guaranty Company, The Travelers Indemnity Company (f/k/a The Aetna Casualty and Surety Company), and Standard Fire Insurance Company are therefore responsible for the liability of Hunt Tool Co.  Avondale hereby asserts a direct action under La. R.S. 22:1269 against United States Fidelity and Guaranty Company, The Travelers Indemnity Company (f/k/a The Aetna Casualty and Surety Company), and Standard Fire Insurance Company for the liability of Hunt Tool Co.

37.

As distributors, suppliers, manufacturers, sellers, and/or users of asbestos-containing products or materials, the Cross-Claim and Third Party Defendants were aware or should have been aware of the dangers presented by exposure to its asbestos products and that Corbert Plaisance, Sr. and those similarly situated could be injured as a result of this type of exposure, but negligently failed to institute protective measures and to warn Corbert Plaisance, Sr. and those similarly situated of the health hazards posed by exposure to asbestos and were negligent in allowing Corbert Plaisance, Sr. to be exposed to unsafe levels of asbestos, which exposures caused or contributed to his alleged injuries, if any.

## JURY DEMAND

Defendant, Avondale, prays for a trial by jury on all issues.

**WHEREFORE**, Defendant, Huntington Ingalls Inc. (f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc.) ("Avondale"), prays that its Answer and Affirmative Defenses to the Petition for Damages and First Supplemental, Amended, and Restated Petition for Damages, Cross-Claims, Third Party Complaint, and Jury Demand be filed and that the Cross-Claim and Third Party Defendants be duly served, and that after all due proceedings are had that there be judgment in favor of Huntington Ingalls Incorporated and against Plaintiffs, dismissing Plaintiffs' claims, with prejudice and at Plaintiffs' cost; and, in the alternative, should Huntington Ingalls Incorporated be found liable to Plaintiffs, which is denied, Huntington Ingalls Incorporated prays that there be further judgment over and against the Cross-Claim and Third Party Defendants for virile share contributions from the Cross-Claim and Third Party Defendants for any and all amounts owed to Plaintiffs, and for virile share credits or offsets with respect to all Cross-Claim and Third Party Defendants or other entities with whom Plaintiffs have or may settle with, and for all other costs of these proceedings.  Huntington Ingalls Incorporated further prays for all other equitable and legal relief as the nature of the case may permit and as the law may allow.

#4930004

Respectfully submitted,

**BLUE WILLIAMS, LLP**

*/s/ Laura M. Gillen*
_____

BRIAN C. BOSSIER (#16818)
EDWIN A. ELLINGHAUSEN, III (#1347)
CHRISTOPHER T. GRACE, III (# 26901)
ERIN H. BOYD (#20121)
LAURA M. GILLEN (#35142)
KIMMIER L. PAUL (#35278)
3421 N. Causeway Blvd., Suite 900
Metairie, LA 70002
Phone: (504) 831-4091
Fax: (504) 837-1182
Email: lgillen@bluewilliams.com
       Avondaleasbestos@bluewilliams.com
*Counsel for Huntington Ingalls Incorporated*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of October  I served a copy of the foregoing pleading on counsel for all parties to this proceeding via e-mail, facsimile, and/or mailing same by United States mail, properly addressed, and first class postage paid

*/s/ Laura M. Gillen*
_____

LAURA M. GILLEN

#4930004